Window World of Baton Rouge, LLC v. Window World, Inc.; Window World of St. Louis, Inc. v. Window World, Inc., 2018 NCBC 101.

STATE OF NORTH CAROLINA

WILKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1

WINDOW WORLD OF BATON
ROUGE, LLC; WINDOW WORLD OF
DALLAS, LLC; WINDOW WORLD
OF TRI STATE AREA, LLC; and
JAMES W. ROLAND,

Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW
WORLD INTERNATIONAL, LLC;
and TAMMY WHITWORTH,

Defendants.

**ORDER AND OPINION FOR *IN CAMERA* REVIEW**

WILKES COUNTY

15 CVS 2

WINDOW WORLD OF ST. LOUIS,
INC.; WINDOW WORLD OF
KANSAS CITY, INC.; WINDOW
WORLD OF SPRINGFIELD/PEORIA,
INC.; JAMES T. LOMAX III;
JONATHAN GILLETTE; B&E
INVESTORS, INC.; WINDOW
WORLD OF NORTH ATLANTA,
INC.; WINDOW WORLD OF
CENTRAL ALABAMA, INC.;
MICHAEL EDWARDS; MELISSA
EDWARDS; WINDOW WORLD OF
CENTRAL PA, LLC; ANGELL P.
WESNERFORD; KENNETH R.
FORD, JR.; WORLD OF WINDOWS
OF DENVER, LLC; RICK D. ROSE;
CHRISTINA M. ROSE; WINDOW
WORLD OF ROCKFORD, INC.;
WINDOW WORLD OF JOLIET, INC.;
SCOTT A. WILLIAMSON;
JENNIFER L. WILLIAMSON; BRIAN
C. HOPKINS; WINDOW WORLD OF
LEXINGTON, INC.; TOMMY R.

JONES; JEREMY T. SHUMATE; WINDOW WORLD OF PHOENIX LLC; JAMES BALLARD; and TONI BALLARD,

           Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH, individually and as trustee of the Tammy E. Whitworth Revocable Trust,

           Defendants.

1. **THIS MATTER** is before the Court upon the following motions in the above-captioned cases: (i) Plaintiffs' Motion for Finding of Waiver of Attorney-Client Privilege and Work-Product Doctrine as to Certain Topics (the "Waiver Motion") and (ii) Plaintiffs' Motion to Compel and Motion for Sanctions for Defendants' Wrongful Assertions of Privilege (the "Motion to Compel"), (collectively, the "Motions").

2. The Court held a hearing on the Motions on August 22, 2018 (the "August 22 Hearing"), at which all parties, as well as non-party Beth Vannoy, were represented by counsel. After reviewing the Motions, the briefs in support of and in opposition to the Motions, the relevant materials associated with the Motions, the arguments of counsel at the August 22 Hearing, the affidavit of Mr. Joseph S. Goode (the "Goode Affidavit"), Plaintiffs' response to the Goode Affidavit, and other relevant matters of record, the Court, in the exercise of its discretion and for good cause shown, hereby concludes that an *in camera* review of certain documents is necessary to resolve the Motions.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Charles E. Coble, Robert J. King III, Benjamin R. Norman, Jeffrey E. Oleynik, and Andrew L. Rodenbough, and Keogh Cox & Wilson, Ltd., by Richard W. Wolff, John P. Wolff, III, and Virginia J. McLin, for Plaintiffs Window World of Baton Rouge, LLC, Window World of Dallas, LLC, Window World of Tri State Area LLC, James W. Roland, Window World of St. Louis, Inc., Window World of Kansas City, Inc., Window World of Springfield/Peoria, Inc., James T. Lomax III, Jonathan Gillette, B&E Investors, Inc., Window World of North Atlanta, Inc., Window World of Central Alabama, Inc., Michael Edwards, Melissa Edwards, Window World of Central PA, LLC, Angell P. Wesnerford, Kenneth R. Ford, Jr., World of Windows of Denver, LLC, Rick D. Rose, Christina M. Rose, Window World of Rockford, Inc., Window World of Joliet, Inc., Scott A. Williamson, Jennifer L. Williamson, Brian C. Hopkins, Window World of Lexington, Inc., Tommy R. Jones, Jeremy T. Shumate, Window World of Phoenix LLC, James Ballard, and Toni Ballard.*

*Manning, Fulton & Skinner, P.A., by Michael T. Medford, Judson A. Welborn, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner & Goode LLC, by Mark M. Leitner, Joseph S. Goode, Jessica L. Farley, Sarah E. Thomas Pagels, and John W. Halpin, for Defendants Window World, Inc. and Window World International, LLC.*

*Bell, Davis & Pitt, P.A., by Andrew A. Freeman and Alan M. Ruley, for Defendant Tammy Whitworth.*

*Wilson Ratledge, PLLC, by Reginald B. Gillespie, Jr., for non-party Anna Elizabeth Vannoy.*

Bledsoe, Chief Judge.

## I.

## PROCEDURAL AND FACTUAL BACKGROUND

3. The procedural and factual background of these matters is set out more fully in *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60 (N.C. Super. Ct. July 12, 2017), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2016 NCBC LEXIS 82 (N.C. Super. Ct. Oct. 25, 2016), and *Window World of St.*

*Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79 (N.C. Super. Ct. Aug. 10, 2015).

4.     At issue in the Motions are various documents that Defendants Window World, Inc. and Window World International, LLC ("Window World Defendants") claim are protected by the attorney-client privilege and work-product doctrine. Specifically, Plaintiffs contend, among other things, that the Window World Defendants have improperly asserted claims of privilege and failed to produce accurate privilege logs.

5.     In April 2016, several months after the commencement of rolling document productions, counsel for the Window World Defendants learned that a number of documents previously produced to Plaintiffs in discovery were inappropriately coded as not confidential, privileged, or eligible for redactions based on privilege. (Goode Aff. ¶ 20, ECF No. 577 (15 CVS 1), ECF No. 614 (15 CVS 2).) On or about April 29, 2016, counsel for the Window World Defendants informed Plaintiffs' counsel that Window World intended to invoke the claw-back provision of the Case Management Order (the "CMO") as to 320 documents previously produced (the "2016 Claw-back"). (Goode Aff. ¶ 22.) On or about May 11, 2016, the Window World Defendants' counsel sent a letter to counsel for Plaintiffs, relinquishing the claim of privilege as to 50 of the 320 documents identified in the 2016 Claw-back. (Goode Aff. ¶ 26.)

6.     The Window World Defendants aver that, after the 2016 Claw-back, counsel investigated the scope of the "inadvertent" disclosure and established a secondary review process to re-review all documents previously reviewed by the attorney who

inappropriately coded the documents subject to the 2016 Claw-back (the "Secondary Review"). (Goode Aff. ¶ 24.) According to the Window World Defendants, on May 11, 2016, counsel completed the Secondary Review and determined that an additional 375 documents required claw-back, and that 48 documents should be subjected to an additional third-pass review. (Goode Aff. ¶ 27.) However, the Window World Defendants contend that counsel "inadvertently failed to pull the documents flagged by May 11, 2016 into a third-pass review set."[1] (Goode Aff. ¶ 28.)

7. The Window World Defendants contend that approximately two years later, in the course of preparing for the April 19, 2018 deposition of Window World's in-house counsel, Beth Vannoy, their counsel "noticed that a number of documents in the binder prepared for counsel's deposition-preparation session with Ms. Vannoy appeared to be privileged communications that had production Bates numbers but no redactions on them." (Goode Aff. ¶ 43.) According to the Window World Defendants, counsel "concluded that 24 documents in the binder were inadvertently produced and

---

[1] The Window World Defendants aver that counsel inadvertently failed to pull the documents flagged during the Secondary Review into a third-pass review set due to:

the numerous time-sensitive tasks, motion practice, and discovery deadlines of these actions at the time including, but not limited to, Window World's motion to dismiss the antitrust claims, Window World's forensic investigation regarding certain employee email accounts, the protocols for the residual email production to address the those [*sic*] email accounts, extensive discussions with Plaintiffs on ESI search terms, review and production of third-party documents, responding to written discovery, review of Plaintiff-produced documents, meeting court-ordered and stipulated production deadlines for certain categories of documents outside of documents responsive to search terms, together with Window World's renewed focus as of May 16, 2016 to resume first-pass document review and rolling productions to Plaintiffs.

(Goode Aff. ¶ 28.)

should have been clawed back . . . and identified 4 documents that required partial claw back." (Goode Aff. ¶ 45.) Counsel also discovered that more than 400 documents from the 2016 Secondary Review had been marked as requiring claw-back but had not yet been clawed back. (Goode Aff. ¶ 46.)

8. On April 13, 2018, without advance notice and just days before Ms. Vannoy's deposition, counsel for the Window World Defendants sent Plaintiffs' counsel a second claw-back letter identifying 336 documents that the Window World Defendants contend had been inadvertently produced (the "2018 Claw-back"). (Goode Aff. ¶ 48; Pls.' Resp. Goode Aff. 5, ECF No. 583 (15 CVS 1), ECF No. 620 (15 CVS 2).)

9. In response to numerous objections by Plaintiffs' counsel, the Window World Defendants relinquished their claim of privilege and released—in full or with redactions—a total of 90 documents identified in the 2018 Claw-back on April 17, May 18, and June 27, 2018. (Goode Aff. ¶¶ 52, 57, 59, 64.)

10. The Window World Defendants contend that the 2018 Claw-back "was the result of a realization on April 9, 2018 that the 2016 claw-back had not been fully completed." (Goode Aff. ¶ 66.) However, the 2018 Claw-back included at least 50 documents that were not produced until after the 2016 Claw-back. (Pls.' Resp. Goode Aff. 2–3.)

11. The 2018 Claw-back identified several documents that were previously introduced at depositions. (Pls.' Br. Supp. Mot. Sanctions and Mot. Compel Defs.' Wrongful Assertions Privilege 5, ECF No. 449 (15 CVS 1), ECF No. 489 (15 CVS 2).) At least one document included in the 2018 Claw-back (WW-0076953) was introduced

as a deposition exhibit by the Window World Defendants' counsel in November 2017. (Pls.' Resp. Goode Aff. 2–3.) Several documents included in the 2018 Claw-back were included in the 2016 Claw-back, but were subsequently released in 2016. (Pls.' Br. Supp. Mot. Sanctions and Mot. Compel Defs.' Wrongful Assertions Privilege 5.)

12. Plaintiffs have also raised several issues with the Window World Defendants' privilege logs. As required by the CMO, the Window World Defendants have divided and logged documents withheld in full or in part on either a privilege log or a privilege redaction log (together, the "Logs").[2]

13. As early as February 14, 2017, the Window World Defendants acknowledged that their Logs were incomplete. (Pls.' Br. Supp. Mot. Sanctions and Mot. Compel Defs.' Wrongful Assertions Privilege Ex. G, ECF No. 449.8 (15 CVS 1), ECF No. 489.8 (15 CVS 2).) The Window World Defendants' counsel committed to providing Plaintiffs with updated Logs by June 30, 2017, (Goode Aff. ¶ 40), but did not provide updated Logs (the "2018 Logs") until April 13, 2018—the same day as the 2018 Claw-back.[3] (Goode Aff. ¶ 41.)

14. The Window World Defendants' 2018 Logs contained certain document descriptions that were different from descriptions included in prior Logs. The Window World Defendants attribute the changed descriptions to the fact that counsel

---

[2] The Window World Defendants' initial privilege log was served on September 25, 2015, and revised or supplemented Logs were served on November 17, 2015, July 29, 2016, January 13, 2017, February 14, 2017, and April 13, 2018. (Goode Aff. ¶¶ 33–41.)

[3] As with the delay in clawing back documents, the Window World Defendants' counsel contends that the deadline was missed due to the "extensive work in this litigation." (Goode Aff. ¶ 40.)

re-reviewed all documents included in prior Logs and "manually drafted descriptions for all entries that used uniform and consistent language" and that "different attorneys were involved in drafting the 2018 logs from those created previously." (Goode Aff. ¶ 40.) Counsel for the Window World Defendants has further averred that "several sets of reviewers have disagreed among themselves with respect to claims of privilege, reasonable minds can differ, and that these are therefore close calls." (Goode Aff. ¶ 66.)

15. According to Plaintiffs, the 2018 Logs were "suspiciously altered" so as to omit references to franchise disclosures. (Pls.' Resp. Goode Aff. 12.) Plaintiffs contend that the 2018 Claw-back and the delay in serving the 2018 Logs "upended Plaintiffs' preparation for and conduct of a number of the most important depositions in this case (including those of Ms. Vannoy, [Defendant Window World, Inc.] board members Jay Vannoy and Jamie McBride, [Defendant Window World, Inc.'s] former CFO Bridget Mathis, and its accountant Randy Blackburn)." (Pls.' Resp. Goode Aff. 7.) Plaintiffs further contend that, in the two years since their production, many of the 2018 Claw-back documents have been "woven into Plaintiffs' strategy" and that the 2018 Claw-back "limited or foreclosed altogether—with very little notice—areas of examination that are central to the franchise issues in the case and that Plaintiffs had long intended to pursue with these witnesses." (Pls.' Resp. Goode Aff. 8.)

16. Through the Motion to Compel, Plaintiffs request that the Court or a special master (i) conduct an *in camera* review as to approximately 280 documents that were included in the 2018 Claw-back for which Plaintiffs challenge the assertion of

privilege (the "Challenged Documents"), (ii) conduct an *in camera* review of all documents identified on the Window World Defendants' 2018 Logs, and (iii) determine whether the Window World Defendants' counsel improperly instructed deponent Beth Vannoy not to answer questions on the basis of privilege. If the Court or a special master finds that assertions of privilege were not justified, Plaintiffs request the Court to impose sanctions, including allowing further deposition of Ms. Vannoy and other witnesses on the content of documents, monetary sanctions, and payment of Plaintiffs' attorneys' fees incurred in challenging the privilege assertions.

17. Through the Waiver Motion, Plaintiffs seek an order ruling that the Window World Defendants waived the protections of the attorney-client privilege and work-product doctrine as to all communications and documents before November 1, 2011 that generally relate to the Window World Defendants' compliance with state and federal franchise laws. (Pls.' Mot. Finding Waiver Attorney-Client Privilege and Work-Product Doctrine Certain Topics 1–2, ECF No. 446 (15 CVS 1), ECF No. 486 (15 CVS 2).) Plaintiffs specifically contend that the Window World Defendants waived the protections of the attorney-client privilege as to these documents based on the two-year delay in initiating the 2018 Claw-back and through application of the crime-fraud exception to the facts of record here. Plaintiffs further request the Court or a special master conduct an *in camera* review of all documents identified on the Window World Defendants' 2018 Logs to determine whether the documents fall within scope of the alleged waiver (i.e. relate to compliance with franchise laws).

II.

LEGAL ANALYSIS

18.     "The attorney-client privilege is well-grounded in the jurisprudence of this State." *In re Investigation of the Death of Miller*, 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003).  The North Carolina Supreme Court has set forth a five-part test to determine whether a particular communication is protected by the attorney-client privilege:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*Id.* (quoting *State v. McIntosh*, 336 N.C. 517, 523–24, 444 S.E.2d 438, 442 (1994)).  "The burden is always on the party asserting the privilege to demonstrate each of its essential elements."  *Id.* at 336, 584 S.E.2d at 787.  However, "the responsibility of determining whether the attorney-client privilege applies belongs to the trial court, not to the attorney asserting the privilege."  *Id.* at 336, 584 S.E.2d at 787–88 (citing *Hughes v. Boone*, 102 N.C. 137, 160, 9 S.E. 286, 292 (1889)).

19.     The work-product doctrine protects from discovery materials prepared in anticipation of litigation.  *Sessions v. Sloane*, 789 S.E.2d 844, 855 (N.C. Ct. App. 2016).  "Materials prepared in the regular course of business are, however, not protected."  *Id.*  In order to determine whether a document was prepared in anticipation of litigation or in the regular course of business, courts consider:

whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

*Id.* (quoting *Cook v. Wake Cnty. Hosp. Sys., Inc.*, 125 N.C. App. 618, 623, 482 S.E.2d 546, 550 (1997)).

20.     A trial court may, in its discretion, order an *in camera* review of documents to assess the propriety of claims of privilege. As noted by the North Carolina Supreme Court,

> [A] trial court is not required to rely solely on an attorney's assertion that a particular communication falls within the scope of the attorney-client privilege. In cases where the party seeking the information has, in good faith, come forward with a nonfrivolous assertion that the privilege does not apply, the trial court may conduct an *in camera* inquiry of the substance of the communication. *See State v. Buckner*, 351 N.C. 401, 411–12, 527 S.E.2d 307, 314 (2000) (trial court must conduct *in camera* review when there is a dispute as to the scope of a defendant's waiver of the attorney-client privilege, such as would be the case when a defendant has asserted an ineffective assistance of counsel claim); . . . *see also Willis v. Duke Power Co.*, 291 N.C. 19, 36, 229 S.E.2d 191, 201 (1976) (trial court may require *in camera* inspection of documents to determine if they are work-product).

*Miller*, 357 N.C. at 336–37, 584 S.E.2d at 787; *see United States v. Zolin*, 491 U.S. 554, 574–75 (1989) ("[T]he party opposing the privilege . . . must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability."). Further, "[i]n cases of doubt whether the privilege has been established, the presiding officer may examine the contested communication *in camera*." *Miller*, 357 N.C. at 337, 584 S.E.2d at 788.

21.     Here, the Court finds that Plaintiffs have come forward with sufficient evidence to support a nonfrivolous assertion that the attorney-client privilege has been improperly invoked to shield from disclosure the Challenged Documents included in the 2018 Claw-back.  Therefore, the Court concludes, in the exercise of its discretion and for good cause shown, that an *in camera* review of the Challenged Documents should be conducted to determine whether the Window World Defendants have asserted claims of privilege as to non-privileged documents.

22.     As to the documents that the Window World Defendants have withheld on the basis of privilege, the Court finds that Plaintiffs have offered sufficient evidence to cause the Court to doubt whether all of the documents withheld from production and identified in the Window World Defendants' 2018 Logs are in fact protected by privilege.   The Court thus concludes, in the exercise of its discretion and for good cause shown, that a sampling review of the documents identified on the 2018 Logs is warranted to test the Window World Defendants' assertions of privilege and whether the document descriptions included in the 2018 Logs are accurate.  In light of the time and expense associated with a full review of all of the documents appearing on the 2018 Logs, the Court concludes, in the exercise of its discretion, that approximately 10% of the documents identified in the Second Amended and Supplemental Privilege Log and Second Amended and Supplemental Redaction Log (the "Sample Log Documents") should be subjected to an initial *in camera* review.

23.     Should the sampling review or the review of the Challenged Documents reveal that the Window World Defendants have withheld as privileged a material

number of nonprivileged documents, the Court reserves the right to consider a broader review of the documents on the 2018 Logs.

24. Having determined that an *in camera* review of documents is appropriate, the Court concludes, in the exercise of its discretion and for good cause shown, that the review should be referred to a special master. Rule 53 of the North Carolina Rules of Civil Procedure provides that "[a]ny or all of the issues in an action may be referred upon the written consent of the parties[.]" N.C. R. Civ. P. 53(a)(1).

25. Plaintiffs, through both the Waiver Motion and the Motion to Compel, move the Court to appoint a special master to conduct the requested *in camera* review. At the June 18, 2018 telephone conference in this matter, the Window World Defendants indicated their consent to the appointment of the Honorable Richard L. Doughton ("Judge Doughton") to serve as a special master in the event the Court determined that an *in camera* review is necessary. The parties indicated their further agreement that Judge Doughton's hourly rate of $350 for his services is fair and reasonable.

26. The Court finds, in the exercise of its discretion and for good cause shown, that it is in the interests of justice and the needs of this action that a special discovery master be appointed to review the Challenged Documents and the Sample Log Documents as provided hereunder. Judge Doughton is familiar with North Carolina law surrounding the attorney-client privilege and the work-product doctrine and is exceptionally well qualified to perform the *in camera* review ordered herein. The Court understands that Judge Doughton is willing and able to accept appointment as

special discovery master in this matter and to conduct an *in camera* review of the Challenged Documents and the Sample Log Documents.

27. Although orally agreeing to Judge Doughton's appointment, the Window World Defendants have not provided written consent as required by Rule 53(a)(1). Consequently, to comply with the requirements of Rule 53 and so that the record is clear, the parties should indicate their consent to Judge Doughton's appointment by executing and returning the Consent to Appointment of Special Master (the "Consent to Appointment") attached hereto as Exhibit A within five days of this Order and Opinion.

28. Based on the findings and conclusions above, the Court, in the exercise of its discretion and for good cause shown, appoints Judge Doughton to serve as special master, effective immediately upon the parties' execution and return of the Consent to Appointment, and orders Judge Doughton to conduct an *in camera* review of the Challenged Documents and the Sample Log Documents as provided below.

29. The Court concludes that Judge Doughton's hourly fee of $350.00 per hour is fair and reasonable for his services in this matter. The parties shall bear the costs of Judge Doughton's fees equally, subject to future modification by the Court in the Court's discretion.

30. The Court defers ruling on the Waiver Motion and Motion to Compel pending the results of Judge Doughton's *in camera* review.

III.

CONCLUSION

31.    **WHEREFORE**, the Court, for the reasons stated herein and in the exercise of its discretion, hereby **ORDERS** as follows:

    a. Effective immediately upon the parties' execution and return of the Consent to Appointment, Judge Doughton is hereby appointed as a special master to conduct an *in camera* review of the Challenged Documents and the Sample Log Documents.

    b. No later than fourteen days from the entry of this Order and Opinion, Plaintiffs and the Window World Defendants shall promptly meet, confer, and file, under seal if appropriate, the following:

        i. The Sample Log Documents identified by Bates numbers. The Sample Log Documents shall be selected by identifying every tenth document listed on the 2018 Logs, in descending order.[4] In the event that a document selected by this procedure duplicates a Challenged Document or a previously-selected Sample Log Document, the next non-duplicate document on the 2018 Logs shall be selected.

        ii. The Challenged Documents identified by Bates number.

        iii. A list of all persons identified in the Sample Log Documents and the Challenged Documents, including an indication of whether

---

[4] For instance, as to the Second Amended and Supplemental Privilege Log, the first Sample Log Document will be WW00390482 and the second will be WW00451985.

each such person is an attorney, a party, a representative of a party, a nonparty, a representative of a nonparty, and such other relevant information as the parties may agree.

    iv.  A joint background statement of no more than 2,500 words to provide necessary factual background to assist Judge Doughton in assessing the application of the attorney-client privilege and the work-product doctrine in the *in camera* review. The Court encourages the parties to reach agreement, but in the event that the parties fail to do so, each may submit a separate background statement of no more than 1,250 words for the Court's consideration for submission to Judge Doughton. Any statement submitted hereunder should state facts, not argument.

    v.  The Window World Defendants shall submit the Sample Log Documents to the Court by zip drive and hard copy for transmission to Judge Doughton.

    vi.  Plaintiffs shall submit the Challenged Documents to the Court by zip drive and hard copy for transmission to Judge Doughton.

c.  Upon receipt of the above-referenced materials, Judge Doughton shall conduct an *in camera* review of the Window World Defendants' privilege assertions and, consistent with the provisions of this Order and Opinion, shall:

i. Review the Challenged Documents and, with respect to each, assess the propriety of the claims of privilege;

ii. Review the Sample Log Documents and, with respect to each, (i) assess the propriety of the claims of privilege, and (ii) determine whether the document descriptions set forth on the 2018 Logs accurately reflect the contents of each document; and

iii. Prepare and submit a report to the Court, as soon as practicable, setting forth the results of the *in camera* review. Upon receipt, the Court will file Judge Doughton's report under seal on the Court's docket.

d. The parties shall cooperate fully with Judge Doughton in the performance of his duties and shall provide any information he may request to facilitate his review.

e. Judge Doughton's compensation shall be based on an hourly rate of $350.00.

f. Judge Doughton's fees shall be paid equally by Plaintiffs and the Window World Defendants, subject to later modification in the Court's discretion.

g. The Court **DEFERS** ruling on the Waiver Motion and the Motion to Compel pending the results of the *in camera* review ordered hereunder.

**SO ORDERED**, this the 28th day of September, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

STATE OF NORTH CAROLINA

WILKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1

WINDOW WORLD OF BATON
ROUGE, LLC; WINDOW WORLD OF
DALLAS, LLC; WINDOW WORLD
OF TRI STATE AREA, LLC; and
JAMES W. ROLAND,

        Plaintiffs,

 v.

WINDOW WORLD, INC.; WINDOW
WORLD INTERNATIONAL, LLC;
and TAMMY WHITWORTH,

        Defendants.

**CONSENT TO APPOINTMENT OF
SPECIAL MASTER**

WILKES COUNTY

15 CVS 2

WINDOW WORLD OF ST. LOUIS,
INC.; WINDOW WORLD OF
KANSAS CITY, INC.; WINDOW
WORLD OF SPRINGFIELD/PEORIA,
INC.; JAMES T. LOMAX III;
JONATHAN GILLETTE; B&E
INVESTORS, INC.; WINDOW
WORLD OF NORTH ATLANTA,
INC.; WINDOW WORLD OF
CENTRAL ALABAMA, INC.;
MICHAEL EDWARDS; MELISSA
EDWARDS; WINDOW WORLD OF
CENTRAL PA, LLC; ANGELL P.
WESNERFORD; KENNETH R.
FORD, JR.; WORLD OF WINDOWS
OF DENVER, LLC; RICK D. ROSE;
CHRISTINA M. ROSE; WINDOW
WORLD OF ROCKFORD, INC.;
WINDOW WORLD OF JOLIET, INC.;
SCOTT A. WILLIAMSON;
JENNIFER L. WILLIAMSON; BRIAN
C. HOPKINS; WINDOW WORLD OF

LEXINGTON, INC.; TOMMY R. JONES; JEREMY T. SHUMATE; WINDOW WORLD OF PHOENIX LLC; JAMES BALLARD; and TONI BALLARD,

              Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH, individually and as trustee of the Tammy E. Whitworth Revocable Trust,

              Defendants.

1. Pursuant to North Carolina Rule of Civil Procedure 53(a)(1), the undersigned parties consent to the appointment of the Honorable Richard L. Doughton ("Judge Doughton") to serve as a special master in the above-captioned cases.

2. The parties understand and agree that the scope of Judge Doughton's powers under the appointment are described in the Court's September 28, 2018 Order and Opinion for *In Camera* Review.

3. The parties understand and agree that Judge Doughton's compensation shall be based on an hourly rate of $350.00. Judge Doughton's fees shall be paid equally by Plaintiffs and the Window World Defendants, subject to later modification in the Court's discretion. The Court may from time to time order one or more of the parties to advance sums to be applied to Judge Doughton's compensation. Any such

advances may be considered by the Court in the final fixing of costs as the Court deems appropriate.

| For Plaintiffs: | For Defendants: |
|---|---|
| _____ | _____ |
| Robert J. King, N.C. State Bar # 15946<br>Charles E. Coble, N.C. State Bar # 25352<br>Benjamin R. Norman, N.C. State Bar # 32852<br>Andrew L. Rodenbough, N.C. State Bar # 46364<br>BROOKS, PIERCE, McLENDON, HUMPHREY & LEONARD, LLP<br>P. O. Box 26000<br>Greensboro, North Carolina   27420-6000<br>Telephone:    (336) 373.8850<br>Facsimile:    (336) 378.1001<br>Email:    rking@brookspierce.com<br>ccoble@brookspierce.com<br>bnorman@brookspierce.com<br>arodenbough@brookspierce.com<br>*Attorneys for Plaintiffs* | Michael T. Medford, N.C. State Bar # 7227<br>Judson A. Welborn, N.C. State Bar # 25756<br>Natalie M. Rice, N.C. State Bar # 43157<br>Jessica B. Vickers, N.C. State Bar # 44873<br>MANNING, FULTON & SKINNER, P.A.<br>3605 Glenwood Avenue<br>Suite 500 (27612)<br>Post Office Box 20389<br>Raleigh, North Carolina   27619<br>Telephone:    (919) 787-8880<br>Facsimile:    (919) 325-4627<br>E-mail:    medford@manningfulton.com<br>welborn@manningfulton.com<br>nrice@manningfulton.com<br>vickers@manningfulton.com<br><br>Mark M. Leitner, WI State Bar # 1009459<br>Joseph S. Goode, WI State Bar # 1020886<br>Sarah E. Thomas Pagels, WI State Bar # 1062162<br>John W. Halpin, WI State Bar #1064336<br>Jessica L. Farley, WI State Bar # 1065839<br>LAFFEY, LEITNER & GOODE LLC<br>325 E. Chicago St.<br>Suite 200<br>Milwaukee, Wisconsin   53202<br>Telephone:    (414) 312-7003<br>Facsimile:    (414) 755-7089<br>E-mail:    mleitner@llgmke.com<br>jgoode@llgmke.com<br>jfarley@llgmke.com<br>spagels@llgmke.com<br>jhalpin@llgmke.com<br>*Attorneys for Defendants Window World, Inc. and Window World International, LLC* |